1  FAEGRE DRINKER BIDDLE & REATH LLP
   Zoe K. Wilhelm (SBN 305932)
2  *zoe.wilhelm@faegredrinker.com*
   Victor J. Sandoval (SBN 344461)
3  *victor.sandoval@faegredrinker.com*
   1800 Century Park East, Suite 1500
4  Los Angeles, California  90067
   Telephone:  +1 310 203 4000
5  Facsimile:   +1 310 229 1285

6  Attorneys for Defendant Delta T LLC

7

8              **UNITED STATE DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11  REBEKA RODRIGUEZ, individually,         Case No. 2:23-cv-03717-HDV-AGR
    and on behalf of all others similarly
12  situated,                               Hon. Hernán D. Vera

13              Plaintiff,                  **DEFENDANT'S NOTICE OF
                                            MOTION AND MOTION TO
14         v.                               DISMISS FIRST AMENDED
                                            COMPLAINT; MEMORANDUM
15  Delta T LLC, a Kentucky limited         AND POINTS OF AUTHORITY IN
    liability company d/b/a                 SUPPORT**
16  WWW.BIGASSFANS.COM
                                            Hearing date:  October 26, 2023
17              Defendant.                  Time:   10:00 a.m.
                                            Courtroom:  5B
18
                                            Complaint served:  May 18, 2023
19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 26, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the United States District Court for the Central District of California, located at United States Courthouse, 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012 before the Honorable Hernán D. Vera, Defendant the Delta T LLC ("Delta T") will move the Court for an Order to dismiss Plaintiff's First Amended Complaint under Rules 8(a)(1), 8(a)(2), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. In compliance with Local Rule 7-3, counsel for Delta T has conferred with counsel for Plaintiff in an attempt to resolve the contents of this motion. Counsel were unable to reach a resolution on the motion.

This motion is based on this filing, the accompanying memorandum of law, all other pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter the Court may properly consider.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM AND POINTS OF AUTHORITIES

## TABLE OF CONTENTS

Page

MEMORANDUM AND POINTS OF AUTHORITIES.........................................I

I.    INTRODUCTION........................................................................1

II.   STATEMENT OF FACTS.............................................................2

III.  STANDARD ...............................................................................4

IV.   ARGUMENT ..............................................................................4

    A.   The Court Lacks Personal Jurisdiction Over Delta T Because the Jurisdictional Facts Proffered Fall Far Short of Due Process Requirements .............................................................................4

    B.   Plaintiff Fails To Allege Sufficient Facts To Support A VPPA Violation....................................................................................8

       1.   Plaintiff fails to plausibly allege that she is a "consumer".........8

          a.   Plaintiff is not a "consumer" or "subscriber" by virtue of downloading a smartphone app .......................9

       2.   Plaintiff fails to plausibly allege that Delta T is a "video tape service provider"....................................................15

          a.   Delta T is not a "video tape service provider"; it sells large ceiling fans. ...................................................15

       3.   Plaintiff fails to plausibly allege that Delta T disclosed "personally identifiable information"......................................16

          a.   An ordinary person could not identify Plaintiff's specific viewing behavior..............................................17

V.    CONCLUSION .........................................................................19

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -
MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

1

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................4

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F.Supp.3d 662 (S.D.N.Y. 2015) ............................................... 10, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................4

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ............................................................ 4, 6

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco*
   *Cnty.*,
   137 S. Ct. 1773 (2017) ...........................................................................8

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................ 6, 7

*Carroll v. J.M. Smucker Co.*,
   No. C 22-08952 WHA, 2023 WL 4053796 (N.D. Cal. June 15,
   2023) ............................................................................................... 6, 7, 8

*Carter v. Scripps Networks, LLC*,
   --- F.Supp.3d ---, No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y.
   Apr. 24, 2023) ...................................................................... 12, 13, 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...............................................................................5

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ................................................................6

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ......................................... 11, 17, 18, 19

*Ellis v. Cartoon Network Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ...................................... 9, 10, 11, 19

*Gardener v. MeTV*,
   No. 22 CV 5963, 2023 WL 4365901 (N.D. Ill. July 6, 2023) .......... 12, 14

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ............................................................................ 9

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................ 5

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
   466 U.S. 408 (1984) ................................................................................ 5

*In re Hulu Priv. Litig.*,
   86 F.Supp.3d 1090 (N.D. Ca. 2015) ..................................................... 17

*In re Hulu Priv. Litig.*,
   No. C 11-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ............ 8, 17, 19

*Hunthausen v. Spine Media, LLC*,
   No. 3:22-CV-1970-JES-DDL, 2023 WL 4307163 (S.D. Cal. June
   21, 2023) ............................................................................................ 12, 13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................ 5

*Jefferson v. Healthline Media, Inc.*,
   No. 22-cv-05059, 2023 WL 3668522 (N.D. Cal. May 24, 2023) ...... 9, 10, 12, 14

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ................................................................ 4

*Massie v. Gen. Motors Co.*,
   No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26,
   2021) ........................................................................................................ 7

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ................................................................ 8

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................. 11, 17

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ................................................................ 4

*Rodriguez et al v. General Mills, Inc.*,
   No. 2:23-cv-01746-DSF-MRW (C.D. Cal filed 03/08/23) ...................... 2

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

*Rodriguez v. Aquatic Sales Solutions LLC*,
    No. 2:23-cv-05198 (C.D. Cal. filed 06/30/23) ....................................................3

*Rodriguez v. Delta T LLC*,
    No. 2:23-cv-03717-HDV-AGR (C.D. Cal filed 05/15/23) ...........................3, 18

*Rodriguez v. Harley-Davidson Motor Company, Inc.*,
    No. 2:23-cv-03931-FLA-JC (C.D. Cal. filed 05/22/23).......................................3

*Rodriguez v. Hodinkee, Inc.*,
    No. 23STCV04667 (LA Sup. Ct. filed 3/3/23) ....................................................2

*Rodriguez v. JP Boden Services Inc.*,
    No. 3:23-cv-534 (S.D. Cal. filed 3/27/23)...........................................................2

*Rodriguez v. Luxy Hair Co.*,
    No. 3:32-cv-657 (S.D. Cal. filed 4/11/23)...........................................................2

*Rodriguez v. Mattress Firm, Inc.*,
    No. 2:23-cv-02930-PA-AS (C.D. Cal filed 04/19/23) .........................................3

*Rodriguez v. The Pampered Chef, Ltd.*,
    No. 2:23-cv-02920-SVW-JPR (C.D. Cal filed 04/18/23) ....................................2

*Rodriguez v. Transform SR Brands LLC*,
    No. 3:23-cv-585 (S.D. Cal. filed 3/31/23)...........................................................2

*Salazar v. Paramount Glob.*,
    No. 3:22-CV-00756, 2023 WL 4611819 (M.D. Tenn. July 18,
    2023) ...................................................................................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..........................................................................6, 7

*Thurston v. Fairfield Collectives of Georgia*,
    53 Cal.App.5th 1231 (2020).............................................................................5, 6

*Tovar v. Sessions*,
    882 F.3d 895 (9th Cir. 2018) ............................................................................12

*In re Vizio Inc. Consumer Priv. Litig.*,
    238 F.Supp.3d 1204 (C.D. Cal. 2017)......................................................9, 15, 16

*Wilson v. Triller, Inc.*,
    598 F.Supp.3d 82 (S.D.N.Y. 2022) ..................................................................19

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

*Yershov v. Gannett Satellite Information Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ............................................................... 11

**Statutes, Rules & Regulations**

18 U.S.C. § 2710(a) ...........................................................................*passim*

18 U.S.C. §2710(b) ....................................................................................... 8

18 U.S.C. §2710(c) ....................................................................................... 8

Cal. Code Civ. P. § 410.10 ........................................................................... 5

**Other Authorities**

Senate Report 100-599, 1988 WL 243503 (1988) ............................. 13, 14

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- v -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

# MEMORANDUM AND POINTS OF AUTHORITIES

## I. INTRODUCTION

This case is part of an abusive effort by a serial litigant to extract settlements from businesses by arguing for a gross misapplication of a narrow privacy statute from the 1980s. The Video Privacy Protection Act ("VPPA") was passed in response to outrage over a video rental store's disclosure of a list of Judge Robert Bork's movie rental history to a local newspaper in connection with her nomination to the United States Supreme Court. The facts alleged here are a far cry from what happened to Judge Bork and do not implicate the concern that led Congress to enact the VPPA. Indeed, Plaintiff is an admitted "tester" who self-manufactured a VPPA claim as part of an ongoing crusade that targets common website analytics and digital marketing tools used by website owners whose businesses have nothing to do with video products or services.

Although Plaintiff filed an amended complaint, the relevant factual allegations are essentially unchanged. Plaintiff alleges that Defendant Delta T LLC ("Delta T" or "Defendant") improperly disclosed personally identifiable information to Google via Google Analytics when she visited www.bigassfans.com and watched a single video entitled "Ask Big Ass Fans — Competitor Comparison." Separate from her visit to the Delta T website, Plaintiff alleges that she downloaded an unidentified smartphone app that purportedly is owned by Delta T. Plaintiff's theory is that her downloading of this app transforms her to a "consumer" entitled to the protection of the VPPA. Plaintiff's VPPA claim is both legally and factually defective for several reasons.

***First***, this Court lacks personal jurisdiction over Delta T because Plaintiff has failed to demonstrate the purposeful direction necessary to show that specific personal jurisdiction exists over Delta T.

***Second***, Plaintiff has not plausibly alleged that she is a "consumer" as defined by the VPPA because she is not a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. §2710(a)(1). Plaintiff

does not allege that she rented, purchased, or subscribed to any video products from Delta T. And she is not a "subscriber" merely because she watched a free brand video on a public website and separately downloaded a free smartphone app at some unspecified time. Indeed, Plaintiff does not plausibly allege any commitment or ongoing relationship with Delta T at all.

*Third*, Plaintiff has not plausibly alleged that Delta T is a "video tape service provider" as defined by the VPPA. Delta T sells large fans. The fact that Delta T's website contains troubleshooting videos does not amount to Delta T being "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" within the meaning of the VPPA. 18 U.S.C. §2710(a)(4).

*Fourth*, Plaintiff has not plausibly alleged that Delta T disclosed "personally identifiable information" to a third-party within the meaning of the VPPA. Her allegation that Delta T disclosed information that would allow an ordinary person to readily identify her video-watching behavior is conclusory, unsupported by well-pled factual allegations, and inconsistent with Ninth Circuit law.

As explained further below, Plaintiff's VPPA claim should be dismissed.

## II.    STATEMENT OF FACTS

Plaintiff alleges that Delta T LLC is "a for-profit Kentucky entity" that sells large ceiling fans and operates the related website, www.bigassfans.com ("the Website"). *See* ECF No. 22 ("FAC") ¶ 5.

Plaintiff is a self-proclaimed "consumer privacy advocate" and "tester" who has brought at least 10 materially identical VPPA cases over the past several months.[1] *Id.* ¶ 18. Plaintiff's Complaint targets a commonly used analytics tool

---

[1] *Rodriguez v. Hodinkee, Inc.*, No. 23STCV04667 (LA Sup. Ct. filed 3/3/23); *Rodriguez et al v. General Mills, Inc.*, No. 2:23-cv-01746-DSF-MRW (C.D. Cal filed 03/08/23); *Rodriguez v. JP Boden Services Inc.*, No. 3:23-cv-534 (S.D. Cal. filed 3/27/23); *Rodriguez v. Transform SR Brands LLC*, No. 3:23-cv-585 (S.D. Cal. filed 3/31/23); *Rodriguez v. Luxy Hair Co.*, No. 3:32-cv-657 (S.D. Cal. filed 4/11/23); *Rodriguez v. The Pampered Chef, Ltd.*, No. 2:23-cv-02920-SVW-JPR

*(footnote continued)*

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

called "Google Analytics" and claims that Delta T discloses visitor "video viewing habits" to the technology company Google. *Id.* ¶¶ 12-16, 20-21.

To manufacture a claim against Delta T for purported violation of the VPPA, Plaintiff alleges that she visited the Website "[i]n the Spring of 2023," and watched a video titled "Ask Big Ass Fans — Competitor Comparison." *Id.* ¶¶ 4, 12. According to Plaintiff, Delta T tracks the videos that its Website visitors watch and discloses their video-watching behavior to Google through Google Analytics. *Id.* ¶¶ 12-16, 20-21, figs. 1-4.

Plaintiff also claims that she "has a Google account" and "when Plaintiff played the video on the Website, Defendant knowingly disclosed the title to Google, along with numerous identifiers that constitute PII." *Id.* ¶ 12-16, 20-21. P At the same time, Plaintiff alleges that "[w]henever the video is played, data is sent to Google that logs detailed information about the video viewed. This data includes the page title and URL, video title and URL, and the _gid cookie." *Id.* ¶ 14. Plaintiff alleges that the "_gid cookie" is "a unique personal identification number for Google Accounts." *Id.* ¶ 15. But, Plaintiff does not explain how an ordinary person could identify Plaintiff through the _gid cookie. Instead, Plaintiff conclusorily and vaguely claims that "Defendant's actions" allows "an ordinary person to identify Plaintiff's video-watching behavior." *Id.* ¶ 16. Plaintiff further alleges that Google allows users to download a summary of their own website activity, and that this somehow "confirms Defendant identifies an individual's video viewing activities." *Id.* ¶ 11. But, once again—even with the opportunity to amend—she does not explain how Plaintiff's ability to download a summary of her own activity means that an ordinary person (or even Defendant) is able to tie the gid_ cookie or any other data to her.

Plaintiff does not allege that she purchased any products from Delta T.  Rather,

_____

(C.D. Cal filed 04/18/23); *Rodriguez v. Mattress Firm, Inc.*, No. 2:23-cv-02930-PA-AS (C.D. Cal filed 04/19/23); *Rodriguez v. Delta T LLC*, No. 2:23-cv-03717-HDV-AGR (C.D. Cal filed 05/15/23); *Rodriguez v. Harley-Davidson Motor Company, Inc.*, No. 2:23-cv-03931-FLA-JC (C.D. Cal. filed 05/22/23); *Rodriguez v. Aquatic Sales Solutions LLC*, No. 2:23-cv-05198 (C.D. Cal. filed 06/30/23).

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

she alleges that she "downloaded Defendant's app onto [her] smartphone," which she claims makes her a "subscriber" and therefore a "consumer" under the VPPA. *Id*. ¶ 17. But, curiously—even with the opportunity to amend—Plaintiff does not identify the app she allegedly downloaded. Plaintiff does not allege whether she downloaded the app before or after she watched a video on the Website. Plaintiff does not allege what she did with the unidentified app (if anything), whether she created an account through the app, or whether she provided any identifying information in connection with the app. Moreover, Plaintiff does not allege that the unidentified app contains video content.

### III.  STANDARD

Plaintiff bears the burden to establish personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Plaintiff must make a "prima facie showing of jurisdictional facts" to withstand a motion to dismiss. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must be dismissed if Plaintiff either fails to state a claim or has not alleged sufficient facts to support a claim. *See id*. at 562-63. A complaint that offers "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

### IV.  ARGUMENT

#### A.  The Court Lacks Personal Jurisdiction Over Delta T Because the Jurisdictional Facts Proffered Fall Far Short of Due Process Requirements

As a general rule, "personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citation omitted). California authorizes jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

Code Civ. P. §410.10. Thus, Plaintiff must carry her burden to establish that "personal jurisdiction in this case would meet the requirements of due process." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

    The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). To exercise personal jurisdiction over a non-resident defendant, the Court must have either (1) "general jurisdiction," which arises where a defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over the defendant in all matters; or (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks, citation, and edits omitted).

    The Complaint cites *Thurston v. Fairfield Collectives of Georgia*, as its basis for jurisdiction. Compl. ¶ 3 (citing 53 Cal.App.5th 1231 (2020)). *Thurston* is a specific jurisdiction case. Accordingly, Plaintiff concedes that there is no basis for general jurisdiction. Thus, Plaintiff must satisfy the Ninth Circuit's three-part test to determine whether a defendant corporation's contacts with the forum state are sufficient to establish specific jurisdiction:

> The non-resident defendant must purposefully direct her activities or consummate some transaction with the forum or resident thereof; or perform some act by which she purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The starting point, then, is for Plaintiff to show that Delta T "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Id*. at 802.

Plaintiff's complaint alleges that because "Plaintiff believes that Defendant generates a minimum of eight percent of its online revenues based upon its website interactions with Californians such that the website 'is the equivalent of a physical store in California'" and thus, "California courts can 'properly exercise personal jurisdiction' over the Defendant in accordance with the court of Appeal opinion in *Thurston v. Fairfield Collectives of Georgia*, 53 Cal.App.5th 1231 (2020)." FAC ¶ 3. However, that case discussed the purposeful availment analysis. Where, as here, Plaintiff's claim sounds in tort rather than contract, the proper inquiry is purposeful direction, not purposeful availment. *Carroll v. J.M. Smucker Co*., No. C 22-08952 WHA, 2023 WL 4053796 (N.D. Cal. June 15, 2023).

To show purposeful direction, Plaintiff must plead facts to satisfy the *Calder* "effects test":  Delta T must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [Delta T] knows is likely to be suffered in the forum state." *Id*. at 803 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Calder v. Jones*, 465 U.S. 783 (1984)). If Plaintiff can satisfy this test, Plaintiff must then tie her claim to that purposefully directed act to establish jurisdiction. *Id*. at 802.

Plaintiff cannot satisfy this test or tie her claim to the allegedly purposefully directed act identified in the Amended Complaint. That is, the allegation that Plaintiff "believes" Defendant generates a minimum of eight percent of its "online

revenues" from website "interactions" with Californian is in no way connected to Plaintiff's claim that Defendant disclosed that Plaintiff watched a video on its Website to Google. FAC ¶ 3. Indeed, Plaintiff does not allege that she purchased a large fan from the Website, or even whether had any intention of purchasing a large fan. Plaintiff's sole conclusory claim is that, when she watched a video on the Website in the Spring of 2023, Defendants violated the VPPA by using Google Analytics. This video privacy claim is unmoored from Plaintiff's conclusory jurisdictional allegations concerning her "belief" Defendant generates a minimum of eight percent of its "online revenues" from website "interactions" with Californians. *Id.*

Particularly on point is Judge Alsup's recent application of these principles on a motion to dismiss a substantially similar VPPA claim brought by the same counsel as Plaintiff's counsel here. *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796 (N.D. Cal. June 15, 2023). There, the court declined to exercise personal jurisdiction over the J.M. Smucker Company, premised on the use of the "Facebook Tracking Pixel" on its website, which, similar to Google Analytic's _gid cookie, is a software product provided by social media company Facebook that gathers website visitor data to facilitate advertising. *Id.* at *1. In holding that "website features that plaintiffs rely on do not indicate interactivity sufficiently directed at California to give rise to specific personal jurisdiction" the Court distinguished the "purposeful availment" case law that Plaintiff's counsel relied upon and noted that the Facebook Pixel "indiscriminately tracks data of all website visitors" and concluded that "[a]t best" "plaintiffs' tort theory sounds in 'untargeted negligence' insufficient to support specific personal jurisdiction." *Id.* at *3-4 (citing *Schwarzenegger*, 374 F.3d at 807; *Calder*, 465 U.S. at 789)); *see also Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL 2142728, at *4-6 (E.D. Cal. May 26, 2021) (website software that "records a random selection of website sessions from users nationwide" and collects users' "location at the time of the visit" does not "constitute the type of minimum

contacts with the forum needed for specific personal jurisdiction"). Here, the jurisdictional allegations concerning Google Analytics are no different than those concerning the Facebook Pixel, insofar as it allegedly gathers website visitor data to facilitate later targeted advertising and indiscriminately tracks data of all website visitors. *See generally* FAC ¶¶ 12-16. Accordingly, here, as in *J.M. Smucker Co.*, Plaintiff has failed to demonstrate the purposeful direction necessary to show that specific personal jurisdiction exists over Defendant. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017). Accordingly, Delta T asks the Court to dismiss this action for lack of personal jurisdiction.

**B.    Plaintiff Fails To Allege Sufficient Facts To Support A VPPA Violation**

The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" about one of its consumers "to any person," and provides for liquidated damages in the amount of $2,500 for violation of its provisions. 18 U.S.C. §§2710(b) and 2710(c)(2). To plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) the plaintiff is a "consumer" of a video tape service provider; (2) the defendant is a "video tape service provider"; and (3) the defendant disclosed the plaintiff's "personally identifiable information," and (4) the disclosure was not authorized by section 2710(b)(2). *In re Hulu Priv. Litig.*, No. C 11-03764, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) (*Hulu II*); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (discussing the fourth element).  Plaintiff has failed to plausibly allege facts to support any of these elements.

**1.    Plaintiff fails to plausibly allege that she is a "consumer"**

Plaintiff claims to be a "consumer" because she downloaded an unidentified smartphone app. This theory lacks merit because the mere downloading of an

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

unidentified smartphone app unrelated to the video Plaintiff watched on the Website does not make Plaintiff a "subscriber" within the meaning of the VPPA.

### a.    Plaintiff is not a "consumer" or "subscriber" by virtue of downloading a smartphone app

Plaintiff conclusorily alleges that she "downloaded Defendant's app onto Plaintiff's smart phone. As such, Plaintiff is a 'subscriber' and therefore a 'consumer' under the VPPA." FAC ¶ 17. This theory fails as a matter of law.

The VPPA expressly defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. §2710(a)(1). A basic principle of statutory interpretation is that courts do not "construe words in a vacuum." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (cleaned up). Instead, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id*. Indeed, the Supreme Court has made clear that "reasonable statutory interpretation must account for both the specific context in which language is used and the broader context of the statute as a whole." *Id*. (cleaned up).

The VPPA does not separately define the term "subscriber." And, although the Ninth Circuit has not had occasion to address the meaning of the term in the context of the VPPA, courts in other jurisdictions have consistently held that the plain language meaning of "subscriber" requires the existence of a firm and ongoing commitment or relationship between the plaintiff and the defendant. For example, the Eleventh Circuit found that a "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). Similarly, California courts have held that to be a "subscriber," a plaintiff must "plausibly allege an association with [the defendant] that is sufficiently substantial and ongoing." *In re Vizio Inc. Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1223 (C.D. Cal. 2017); *see also Jefferson v. Healthline Media, Inc.*, No. 22-cv-05059,

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) ("[i]n the days when the VPPA was enacted, to 'subscribe,' in ordinary usage, meant 'to enter one's name for a publication or service' or 'to receive a periodical or service regularly on order.'") (holding that plaintiff had not plausibly alleged "subscriber" status by conclusorily stating she had signed up for an email list.). Indeed, the touchstone of a subscriber relationship is a "deliberate and durable affiliation with the provider: . . . these arrangements necessarily require some sort of ongoing relationship between provider and subscriber." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F.Supp.3d 662, 669 (S.D.N.Y. 2015).

Merely downloading an unspecified app on her smartphone at some unspecified time (again, with the opportunity to amend) does not make Plaintiff a "subscriber" under the VPPA. The Eleventh Circuit's holding in *Ellis* is directly on point in this regard. In *Ellis*, the court found that "downloading an app for free [on a smartphone] and using it to view [video clips] at no cost is not enough to make a user of the app a 'subscriber' under the VPPA." 803 F.3d at 1257. Again, Plaintiff does not identify the app she allegedly downloaded—even with the opportunity to amend—and she alleges that she watched the video on the Website—not the app. FAC ¶ 4 ("Plaintiff watched a video . . . on Defendant's website at the link . . ."). So, as alleged, Plaintiff is even less-plausibly a "subscriber" than the Plaintiff in *Ellis*, who alleged that she had used the app to view the video. *Compare Ellis*, 803 F.3d at 1257 *with* FAC ¶ 4. But, even if Plaintiff had alleged that she used the app to view the video, as in *Ellis*, she cannot allege that "there is [an] ongoing commitment or relationship" between Plaintiff and Delta T by merely viewing a single video on the Website. *Ellis*, 803 F.3d at 1257. Like the plaintiff in *Ellis*, Plaintiff would be "free to delete the app without consequences whenever she likes." *Id*.; *see also Jefferson*, 2023 WL 3668522, at *3 (granting motion to dismiss because "[t]she Court cannot discern or infer from the complaint whether Jefferson receives any kind of publication, let alone any good or service, in exchange for

signing up for Healthline's email list.").

To the extent that Plaintiff seeks to rely on the First Circuit's interpretation of "subscriber" in *Yershov v. Gannett Satellite Information Network, Inc.*, she is misguided. 820 F.3d 482 (1st Cir. 2016).[2] Under *Yershov*, Plaintiff is not a "subscriber" because she has not alleged any relationship with Delta T in connection with the app. In finding that the plaintiff in *Yershov* was a subscriber based on her use of the USA Today app, the court was persuaded by the specific allegations concerning the nature and extent of the relationship arising from the app—namely that "Yershov used the mobile device application that Gannett provided to him, which gave Gannett *the GPS location of Yershov's mobile device at the time she viewed a video*, *her device identifier*, and *the titles of the videos she viewed* in return for access to Gannett's video content." 820 F.3d at 489 (emphases added). Plaintiff's allegations regarding Delta T's app are easily distinguishable from *Yershov* because her allegations are devoid of any factual detail regarding her use of the app or what, if any, personal information was disclosed through the app. Critically, Plaintiff does not allege that she used the unidentified app to watch the video at issue; nor does she allege that she provided any identifying information to Delta T in connection with the app. In fact, despite the opportunity to amend, Plaintiff does not even allege that she used the app *at all*—just that she downloaded it on her smartphone (for free). Simply put, unlike in *Yershov* (and *Ellis* for that matter), the app here has no connection at all to the underlying alleged violation of the VPPA.

Moreover, even with the chance to amend, Plaintiff does not allege that she downloaded the app *before* she watched the video on the Website. The timing is

---

[2] To the extent *Yershov*'s interpretation of "subscriber" differs from *Ellis*, this Court should follow *Ellis*. Indeed, the Ninth Circuit expressly declined to follow *Yershov*, in favor of *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) when it held that the ordinary person standard test should apply to determine what the term "personally identifiable information" in the VPPA encompasses. *See* Sec. IV.B.3 *below* (discussing *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017)).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

1    relevant to Plaintiff's "subscriber" theory because she alleges a contemporaneous

2    disclosure of video-viewing activity to Google. *See* FAC ¶ 20 ("*When* Plaintiff played

3    the video on the Website, Defendant knowingly disclosed the title to Google")

4    (emphasis added). If Plaintiff had not yet downloaded the app before watching a video

5    on the Website, then she plainly was not a "consumer" or "subscriber" at the time of

6    the purported disclosure of the video-viewing activity at issue. It would be an absurd

7    result to allow a website visitor to transform themselves into a "subscriber" and obtain

8    the protections of the VPPA *after* an otherwise permissible disclosure had already

9    occurred. *See Tovar v. Sessions*, 882 F.3d 895, 904 (9th Cir. 2018) ("Interpretations of

10   a statute which would produce absurd results are to be avoided.") (cleaned up).

11       Even if downloading an app were sufficient to make one a subscriber (and it is

12   not), Plaintiff fails to allege any nexus between the app and the video. Recent courts

13   conducting detailed analyses of the VPPA's "consumer" have held that it "provides for

14   an action by a renter, purchaser of subscriber *of audio-visual materials*, and not a

15   broader category of consumers." *Hunthausen v. Spine Media, LLC*, No. 3:22-CV-1970-

16   JES-DDL, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) (quoting *Carter v.*

17   *Scripps Networks, LLC*, --- F.Supp.3d ---, No. 22-cv-2031, 2023 WL 3061858, at *6

18   (S.D.N.Y. Apr. 24, 2023) (emphasis added); *see also Salazar v. Paramount Glob.*, No.

19   3:22-CV-00756, 2023 WL 4611819, at *11 (M.D. Tenn. July 18, 2023) (same);

20   *Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *4 (N.D. Ill. July 6, 2023)

21   (same); *Jefferson*, 2023 WL 3668522, at *3 (similar). This interpretation makes sense

22   given the VPPA's overall statutory scheme. The defined term "video tape service

23   provider" is part of the definition of "consumer." 18 U.S.C. §2710(a)(1). This confirms

24   the two definitions are paired—the "goods or services" purchased, rented, or subscribed

25   to must be "from a video tape service provider," which in turn is a person "engaged in

26   the business . . . of rental, sale or delivery of prerecorded video cassette tapes or similar

27   audio visual materials." 18 U.S.C. §2710(a)(1), (4); *see also Carter*, 2023 WL

28   3061858, at *6. In other words, the goods or services must be of the type that a video

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

tape service provider would rent, sell, or deliver to its customers, *i.e.*, prerecorded video cassette tapes or similar audiovisual goods or services. Moreover, the inclusion of the phrase "specific *video* materials or services from a video tape service provider" in the statutory definition of "personally identifiable information" further confirms that the statute's protection only extends to transactions involving video materials and not non-video products.[3] 18 U.S.C. §2710(a)(3) (emphasis added); *see also Spine Media, LLC*, 2023 WL 4307163, at *3 ("[I]n order to be a 'consumer' the individual must rent, purchase or subscribe for goods or services from a video tape service provider.").

Plaintiff does not and cannot allege that the app she downloaded contains video content.  She therefore cannot be a "subscriber" of video products or services. In *Carter*, the plaintiff alleged that they had subscribed to hgtv.com newsletters by providing their email addresses and that the newsletters linked back to articles and videos on hgtv.com. *Carter*, 2023 WL 3061858, at *1. But they did not allege that subscribing to the newsletters was a condition of accessing videos on hgtv.com. *Id*. The court found that the plaintiffs were not "subscribers" and thus were not "consumers" within the meaning of the VPPA because "[t]hey were subscribers to newsletters, not subscribers to audio visual materials." *Id*. at *6–7. Indeed, the "[p]laintiffs were free to watch or not watch hgtv.com videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site." *Id*. at *6. Because the plaintiffs did not plausibly allege that they were "subscribers," the court dismissed their VPPA claim. *Id*. at *7.

This nexus between the consumer or subscriber relationship is important because, without it, a defendant does not have any reason to know who the plaintiff is when she watches a video. Indeed, Plaintiff does not plead any facts to plausibly

---

[3] This is consistent with the VPPA's legislative history. The VPPA's definition of PII "includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." Senate Report 100-599, 1988 WL 243503, at *12 (1988).

1    suggest that Delta T could identify her at the time she visited the Website or would

2    have any ability to do so based on her alleged downloading of the unidentified app.

3    The need for a sufficient nexus between the video and the downloading of the

4    app—to ensure the defendant knows who the "consumer" is and what its privacy

5    obligations are—is implicit in the overall statutory scheme and consistent with its

6    underlying purpose—"[t]o preserve personal privacy with respect to the rental,

7    purchase, or delivery of video tapes or similar audio visual materials." *See* Senate

8    Report 100-599, 1988 WL 243503, at *1.

9         In accordance with these principles, another court recently found a plaintiff

10   was not a "subscriber" where he alleged that he "opened an account separate and

11   apart from viewing video content" on defendant's website. *MeTV*, 2023 WL

12   4365901, at *4. Like the plaintiff in *MeTV*, Plaintiff is not a "subscriber" because

13   downloading an unidentified app published by Defendant is "unconnected to their

14   ability to access video content". *Id.* (citing *Carter*, 2023 WL 3061858, at *1).

15        Here, as in *MeTV* and in *Carter*, Plaintiff is not a "subscriber" because she is

16   free to watch videos on the Website without any ongoing obligation to Defendant. *Id.*

17   (citing *Carter*, 2023 WL 3061858, at *6–7); *see also Austin-Spearman*, 98 F.Supp.3d

18   at 669 (visiting website to view videos is "casual consumption of web content" and

19   insufficient to render plaintiff a "subscriber" under VPPA). In fact, Plaintiff's

20   connection to Delta T is even more attenuated than the plaintiffs in *MeTV* and *Carter*

21   because those plaintiffs alleged that they had provided Defendants their names and/or

22   email addresses when signing up for unrelated accounts and newsletters. *MeTV*, 2023

23   WL 4365901, at *5.; *Carter*, 2023 WL 3061858, at *6; *see also Jefferson,* 2023 WL

24   3668522, at *3 (holding plaintiff had not plausibly alleged that she was a subscriber

25   although she claimed she provided defendant her name and email address). Here,

26   Plaintiff does not allege that she provided any identifying information to Delta T

27   when she downloaded the unidentified app—she does not allege she made an

28   account, she does not allege she joined a newsletter—she does not allege any

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

relationship with Delta T whatsoever.  As a result, Plaintiff is not a "subscriber" within the meaning of the VPPA and her claim must be dismissed.

**2.    Plaintiff fails to plausibly allege that Delta T is a "video tape service provider"**

To be a "video tape service provider" a defendant must be "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. §2710(a)(4). Plaintiff cannot plausibly allege facts to support a conclusion that Delta T is a video tape service provider because Delta T is not engaged in the business of providing video tape services—as Plaintiff concedes—it sells large ceiling fans. FAC ¶ 5.

**a.    Delta T is not a "video tape service provider"; it sells large ceiling fans.**

In both the original complaint and the FAC, Plaintiff alleged that Delta T offers "multiple videos" to watch on the Website. FAC ¶ 5; ECF No. 1 ¶ 5. The only substantive allegations added to the FAC are a list of support videos available on the Website. *See* FAC ¶¶ 33-46. However, the list of support videos are still insufficient to allege that Delta T is in "engaged in the business of" rental, sale, or delivery of prerecorded audio-visual materials. The word "business" when used in the context of the VPPA "connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *Vizio*, 238 F.Supp.3d at 1221. For a defendant "to be engaged in the business of delivering video content [under the VPPA], the defendant's *product* must not only be *substantially involved* in the conveyance of video content to consumers but also *significantly tailored* to serve that purpose." *Id.* (emphases added). The fact that a business "might be peripherally or passively involved in video content delivery do[es] not [bring it] within the statutory definition of a video tape service provider." *Id.* at 1221–22. In *Vizio*, for example, the court found that the plaintiff plausibly alleged that the defendant was a video tape service provider because the defendant's SmartTV products and related apps were "intimately

- 15 -

involved in the delivery of video content to consumers" and were marketed as a "'passport' to this video content," and because the defendant "created a supporting ecosystem to seamlessly deliver video content to consumers (including entering into agreements with content providers such as Netflix and Hulu)" through these products. *Id.* at 1222.

The fact that Delta T's Website contains a handful of support videos does not mean Delta T is "engaged in the business" of delivering video content within the meaning of the VPPA—indeed, each of these videos, which assist customers in the use of Delta T's large ceiling fans, only serve to further support the fact that Delta T is engaged in the business of selling large ceiling fans. No other factual allegations are offered in support of Plaintiff's claim that Delta T is a video tape service provider. Instead, Plaintiff conclusorily alleges that "Defendant is a 'video tape service provider' as defined by the VPPA." FAC ¶ 29. These conclusory allegations fall far short of the mark.

Accordingly, Plaintiff has not plausibly alleged any non-conclusory facts that allege that video content is "a focus of [Delta T's] work" or that any Delta T product or service—or even any product or service of Delta T's independent licensees— is "substantially involved in the conveyance of video content to consumers [and] also significantly tailored to serve that purpose." *Vizio*, 238 F.Supp.3d at 1221. To the contrary, Plaintiff's allegations regarding the video content on the Website at most reveal the kind of peripheral or passive involvement that the *Vizio* court explained could not "reasonably constitute 'the business' of delivering video content." *See id.* at 1221–22. As a result, Plaintiff's VPPA claim should be dismissed on this separate basis.

### 3. Plaintiff fails to plausibly allege that Delta T disclosed "personally identifiable information"

Plaintiff has also failed to allege that Defendant disclosed the plaintiff's "personally identifiable information" within the meaning of the VPPA. The VPPA

defines PII as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. §2710(a)(3). Accordingly, to allege a disclosure of PII within the meaning of the VPPA, a plaintiff must allege that the defendant disclosed to a third-party "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095 (N.D. Ca. 2015) (*Hulu III*). In other words, to allege disclosure of PII, Plaintiff must be able to allege that disclosures enable *an ordinary person* to readily identify that a *particular individual* has watched or requested to watch a *specific* video. "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information *connecting a certain user* to *certain videos*." *Hulu III*, 86 F.Supp.3d at 1095 (emphases added); *see also Hulu II*, 2014 WL 1724344, at *6 (VPPA prohibits disclosures that tie specific people to the videos they watch). Plaintiff has not adequately alleged disclosure of PII because none of her allegations plausibly suggest that an ordinary person could identify Plaintiff based on the information Delta T allegedly disclosed.

### a.    An ordinary person could not identify Plaintiff's specific viewing behavior.

Plaintiff has not adequately alleged disclosure of PII because none of her allegations plausibly suggest that an "ordinary person" could identify Plaintiff based on the information Delta T allegedly disclosed. In *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), the Ninth Circuit adopted the "ordinary person" test for PII set forth in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016). Under the ordinary person test, only disclosures that enable *an ordinary person* to readily identify that a *particular individual* has watched a *specific* video are actionable under the VPPA. *Eichenberger*, 876 F.3d at 985. In *Eichenberger*, for example, the Ninth Circuit affirmed dismissal of the

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

1  plaintiff's VPPA claim at the pleadings stage because it found that disclosure of the

2  names of videos watched along with a unique device serial number that enabled a

3  web analytics firm to identify specific consumers would not enable "an ordinary

4  person" to readily do so unless it was combined with other data in the analytics

5  firm's possession, and thus was not PII. 876 F.3d at 986.

6      Here, Plaintiff claims that she "has a Google account" and "when Plaintiff

7  played the video on the Website, Defendant knowingly disclosed the title to Google,

8  along with numerous identifiers that constitute PII." FAC ¶¶ 12-16, 20-21. Despite

9  her conclusory allegation that "numerous identifiers" are shared, there is only one

10 piece of data that Plaintiff suggests may identify her. Plaintiff alleges the "_gid

11 cookie" is "a unique personal identification number for Google Accounts," *id*. ¶ 15

12 and that "[w]henever the video is played, data is sent to Google that logs detailed

13 information about the video viewed. This data includes the page title and URL, video

14 title and URL, and the _gid cookie." *Id*. ¶ 14.   Plaintiff does not allege any non-

15 conclusory supporting facts to demonstrate *how* an *ordinary person* could use the

16 _gid cookie or the fact that she has a Google account to identify her (*i.e.*, Rebeka

17 Rodriguez) *and* connect her to any video-viewing information. Any data in Figures

18 1-4 do not identify Plaintiff by name or explain how they could be used to identify

19 her by name or anything other than a _gid cookie. The _gid cookie is no more likely

20 to enable "an ordinary person" to identify Plaintiff than the unique device serial

21 number that enabled a web analytics firm to identify specific consumers in

22 *Eichenberger* and, accordingly, the ordinary individual standard is not met.[4]

23     That Plaintiff "has a Google account," FAC ¶ 12, or is able to download her

24 own website activity, FAC ¶ 11, adds nothing to the ordinary person analysis.

25 Plaintiff does not allege any facts purporting to explain *how* her Google account

---

[4] Not only does Plaintiff fail to allege any facts explaining how an ordinary person could connect a _gid cookie to her, but she also fails to allege how *Delta T* could do so. In fact, Plaintiff does not allege that she provided any identifying information to Delta T such that Delta T knew her identity when she supposedly visited the Website and watched a free video.

plays a role in supposedly enabling an ordinary person to identify her using information in Figure 3, or to connect her to any video-viewing information. Even if the Court were to infer that a sophisticated technology company like Google could potentially piece together the _gid cookie and information from other sources to identify Plaintiff and connect her to a specific video-viewing history, that still would not be enough to constitute PII as a matter of black letter Ninth Circuit law. *See Eichenberger*, 876 F.3d at 986 ("We conclude that an ordinary person could not use the information that Defendant allegedly disclosed to identify an individual. Plaintiff has therefore failed to state a claim under Rule 12(b)(6).").

On its face, the _gid cookie is similar to the "digital code in a cookie file" that "to an average person . . . would likely be of little help in trying to identify an actual person," and therefore is not PII. *Nickelodeon*, 827 F.3d at 283–84 (affirming dismissal of VPPA claim and noting that most courts agree with *Hulu II* that static digital identifiers of the sort that can only, "in theory, be combined with other information to identify a person do not count as" PII.). Like *Eichenberger* and *Nickelodeon*, other courts have found that disclosures of unique identification numbers do not qualify as disclosures of PII. *See, e.g.*, *Hulu II*, 2014 WL 1724344, at *11–12 (the title of a video along with a variety of static identifiers such as unique user identification numbers is not PII); *Wilson v. Triller, Inc.*, 598 F.Supp.3d 82, 92 (S.D.N.Y. 2022) (a unique user identification number, device information, and data about videos that were loaded, played or liked is not PII); *Ellis*, 803 F.3d at 1254–55 (an Android ID paired with viewing history is not PII because they do not link an actual person to actual video materials). Consistent with these cases, Plaintiff's VPPA claim should be dismissed due to her failure to plausibly allege that Delta T disclosed PII.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

1    Dated:  August 4, 2023        FAEGRE DRINKER BIDDLE & REATH LLP

2

3                             By: *s/ Zoë K. Wilhelm*
                                    Zoë K. Wilhelm

4                             Attorneys for Defendant
                            Delta T LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -
MEMO ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:23-cv-03717-HDV-AGR

1

## **Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Delta T, LLC certifies that this brief
contains 6766 words, which complies with the word limit of L.R. 11-6.1.

Dated:  August 4, 2023

FAEGRE DRINKER BIDDLE &
REATH LLP


By: *s/ Zoë K. Wilhelm*
      Zoë K. Wilhelm

Attorneys for Defendant Delta T LLC

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -